UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ARTICLE 13 LLC,

               Plaintiff,

       v.

PONCE DE LEON FEDERAL BANK,
LASALLE NATIONAL BANK ASSOCIATION,
and ALLIANCE MORTGAGE BANKING
CORP.,

               Defendants.

**MEMORANDUM & ORDER**
20-cv-03553 (HG) (RML)

---

**HECTOR GONZALEZ**, United States District Judge:

      Plaintiff Article 13, LLC brings this quiet title action against Defendants LaSalle National Bank Association ("LaSalle"),[1] Central Mortgage Company ("CMC"),[2] Alliance Mortgage Banking Corp. ("Alliance Mortgage") and Ponce de Leon Federal Bank ("Ponce de Leon") (collectively, "Defendants"), pursuant to 28 U.S.C. § 1332, to cancel a consolidated mortgage loan encumbering a property located at 53 Van Buren Street, Brooklyn, New York (the "Property"). Plaintiff argues that pursuant to Article 15 of the New York Real Property Actions and Proceedings Law ("RPAPL"), the statute of limitations governing Defendants' ability to foreclose on the property expired after Defendant LaSalle's loan servicer, CMC, accelerated the debt by commencing a foreclosure proceeding in 2007 in Kings County Supreme Court. ECF No. 1 ¶¶ 19–22. As a result, Plaintiff alleges that it is entitled to a judgment canceling and

---

[1] Defendant U.S. Bank National Association, as Trustee, successor in interest to Bank of America National Association, as Trustee, successor by merger to LaSalle, as Trustee for Morgan Stanley Mortgage Loan Trust 20-07-2AX, Mortgage Pass-Through Certificates (the "Trust"), was sued in this action as "LaSalle National Bank Association." ECF No. 40-1.

[2] CMC was dismissed from the action pursuant to a Stipulation of Voluntary Dismissal filed on October 6, 2020. *See* ECF No. 15.

discharging the mortgage. Presently before the Court is Plaintiff's motion for summary judgment on its RPAPL claim, ECF No. 42-1, and Defendant LaSalle's motion for summary judgment and dismissal of Plaintiff's Complaint, ECF No. 40-1.[3] For the reasons set forth below, both motions are denied.

## BACKGROUND

On September 18, 2006, JAJ Corp. conveyed the Property to Lisa Abbott (the "Borrower"). Plaintiff's Counterstatement to the Defendant's Rule 56.1 Statement of Material Facts ("Plaintiff's 56.1"), ECF No. 48-2 ¶ 2. At the time the Property was conveyed, it was already secured by a mortgage loan received by JAJ Corp. from Defendant Ponce de Leon. *Id.* ¶¶ 3–5. That same day, the Borrower received a loan from Defendant Alliance Mortgage, which was also secured by a mortgage on the Property. *Id.* ¶¶ 6–7. The two loans were subsequently consolidated (the "Consolidated Loan") to form a single mortgage lien (the "Senior Mortgage"). *Id.* ¶ 10. In connection with the consolidation, the Borrower executed a consolidated note (the "Note") in favor of Defendant Alliance Mortgage. *Id.* ¶ 10. Defendant Alliance Mortgage indorsed the original "wet ink" Consolidated Note in blank.[4] *Id.* ¶ 16.

On September 18, 2006, the same day that Borrower executed the Senior Mortgage, the Borrower executed another mortgage in the amount of $215,000, in favor of Mortgage Electronic Registration Systems, Inc., as nominee for Alliance Mortgage (the "Junior Mortgage").

---

[3] Plaintiff's motion for summary judgment is a mirror image of Defendant's motion for summary judgment: Plaintiff seeks summary judgment on its RPAPL claim and Defendant seeks dismissal of the claim. Accordingly, any finding of a genuine dispute of material fact precludes a grant for summary judgment for either party. *See* FRCP 56(a).

[4] "An instrument payable to order and indorsed in blank becomes payable to bearer and may be negotiated by delivery alone until specially indorsed." N.Y. Uniform Commercial Code § 3-204.

2

Defendant's Rule 56.1 Counterstatement of Material Facts in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's 56.1"), ECF No. 47-1 ¶ 3.

On or before January 31, 2007, through various assignments and mergers, and a Pooling and Servicing Agreement (the "PSA"), ownership of the Note and Senior Mortgage was transferred to the Trust, and LaSalle became the Trustee for the Trust. ECF No. 48-2 ¶ 13 (Plaintiff's 56.1). CMC serviced the Consolidated Loan on behalf of the Trust until, the exact termination date is disputed by the parties. *Id*. ¶ 23; ECF No. 47-1 ¶ 12 (Defendant's 56.1).

On February 1, 2007, the Borrower defaulted on the Consolidated Loan secured by the Senior Mortgage and on August 27, 2007, CMC commenced an action in Kings County Supreme Court to foreclose on the Senior Mortgage under the Consolidated Loan (the "Foreclosure Action"). ECF No. 48-2 ¶¶ 27, 32 (Plaintiff's 56.1). To date, no payment has been made on the Consolidated Loan since the Borrower's default. *Id.* ¶ 29. On May 1, 2017, CMC moved to voluntarily discontinue the Foreclosure Action and a few weeks later, the court granted CMC's motion. *Id.* ¶¶ 39–40.

On June 30, 2020, the Junior Mortgage was assigned to Plaintiff. ECF No. 47-1 ¶ 4 (Defendant's 56.1). On August 6, 2020, Plaintiff commenced the instant action asserting two claims seeking: (i) a declaratory judgment that the loans securing the Senior Mortgage were consolidated; and (ii) a judgment canceling and discharging the Senior Mortgage as time-barred pursuant to RPAPL § 1501(4). ECF No. 48-2 ¶ 42 (Plaintiff's 56.1); *see also* ECF No. 1. While the parties' motions for summary judgment have been pending, Plaintiff voluntarily dismissed its claim for a declaratory judgment. ECF No. 45.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted).

In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995). In reviewing the evidence and inferences that may reasonably be drawn, the court "may not make credibility determinations or weigh the evidence . . . . Credibility determinations . . . [are a] jury function[ ], not [that] of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation and internal quotation marks omitted). Nevertheless, "[t]he mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]." *Anderson*, 477 U.S. at 252.

**DISCUSSION**

Plaintiff argues that the six-year statute of limitations was triggered when CMC filed the Foreclosure Action and was not de-accelerated within the statute of limitations period. *See generally* ECF No. 42-1. Defendant argues that Plaintiff's sole remaining cause of action, the claim under RPAPL § 1501(4), fails for multiple reasons. First, Defendant argues that Plaintiff failed to join an allegedly necessary party to this lawsuit. Second, Defendant asserts that the statute of limitations for commencing an action to foreclose has not expired. Finally, Defendant argues that Plaintiff allegedly failed to file a notice of pendency.

### I.   RPAPL § 1501(4)

"Article 15 of New York's RPAPL codifies the common law action to quiet title." *53rd Street, LLC v. U.S. Bank Nat'l Ass'n*, 8 F.4th 74, 77 (2d Cir. 2021). In order to discharge a mortgage pursuant to RPAPL § 1501(4), a plaintiff must demonstrate: "1) that it has an estate or interest in the real property; 2) that all necessary parties to the action were joined; and 3) that the applicable statute of limitations for commencing a foreclosure action has expired without the commencement of a foreclosure action." *Id.* at 78 (quoting *Gustavia Home LLC v. Env't Control Bd.*, No. 18-cv-6485, 2019 WL 4359549, at *5 (E.D.N.Y. Aug. 21, 2019)). The parties do not dispute Plaintiff's satisfaction of the first prong of the test, *see* ECF No. 47-1 ¶ 4 (Defendant's 56.1), but disagree about whether all necessary parties were joined, and whether the statute of limitations to bring a foreclosure action has expired.

#### A.  Failure to Join a Necessary Party

Defendant argues that it is entitled to summary judgment because Plaintiff failed to join all necessary parties. "Where it appears to the court that a person not a party to the action may have an estate or interest in the real property which may in any manner be *affected* by the

5

judgment, the court . . . may direct that such person be made a party." RPAPL § 1511(2) (emphasis added). Defendant alleges that Van Buren Group Inc. ("Van Buren") is the Property's titleholder of record since March 3, 2016, and that Van Buren has not been joined in this action. ECF No. 40-1 at 10. Plaintiff contends that Van Buren's interest in the Property is "uncertain" as a result of a pending action in Kings County Supreme Court between the Borrower and subsequent interest holders, including Van Buren, for fraudulent inducement and invalid transfer ("Invalid Transfer Action"). *See* ECF No. 48 at 14; ECF No. 48-18 at 4–7 (Invalid Transfer Action complaint).

A deed dated February 17, 2016, reflects that the Property was transferred from ABC Investors Management Corp. to Van Buren. *See* ECF No. 48 at 6; ECF No. 48-17 at 2 (Bargain and Sale Deed). "[A] nonparty purchaser of the subject property [has] an interest in the property as contemplated by RPAPL 1501(4) and, in this regard, is a necessary party to [a RPAPL] action, since his or her interest in the property would be affected by any judgment rendered herein." *Guccione v. Estate of Guccione*, 923 N.Y.S.2d 591, 593 (N.Y. App. Div. 2011). While the outcome of the Invalid Transfer Action is uncertain, neither party disputes that the Property was conveyed to Van Buren. ECF No. 48-2 ¶ 21 (Plaintiff's 56.1). Accordingly, the Court finds that Van Buren, as the current title owner, is a necessary party and should have been joined to these proceedings.

"[T]he proper remedy for nonjoinder in [an action to quiet title] would be to direct that the party be joined as a defendant, not to dismiss the action upon the motion of the party who was properly named." *Windward Bora, LLC v. U.S. Bank Nat'l Ass'n as Legal Title Trustee for Truman 2016 SC6 Title Trust Letter*, No. 19-cv-2256, 2020 WL 5531566, at *2 (E.D.N.Y. Sept. 15, 2020) (alteration in original) (citing *Central Mortg. Co. v. Davis*, 53 N.Y.S.3d 325, 328

6

(N.Y. App. Div. 2017)). Defendant argues that Plaintiff should not be permitted to amend its complaint to join Van Buren because doing so would be prejudicial in light of the "late stage of the proceedings." ECF No. 40-1 at 10–11. "Leave to amend the pleadings . . . is within the discretion of the trial court," but any such decision must consider any bad faith and/or prejudice to Defendant. *Zenith Radio v. Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330–31 (1971).

According to Defendant, it would be prejudiced by any amendment because: (i) discovery closed on July 30, 2021, *see* ECF No. 40-1 at 11; (ii) the parties are currently engaged in summary judgment practice, *id.*; and (iii) joining Van Buren will require Defendant to expend "significant additional resources to defend this action" because Van Buren would be entitled to conduct discovery, *id.* However, Plaintiff stipulates that any amendment to join Van Buren "would not introduce new legal theories or claims" against Defendant, and that it "would not seek to amend the [action] to add additional claims which would require further discovery or resources." ECF No. 48 at 17. Moreover, any discovery that Van Buren would be entitled to has presumably already been exchanged between the parties, and any burden to provide that discovery to Van Buren would fall on Plaintiff. The Court therefore does not find that the failure to join Van Buren should result in dismissal of the action. *See Central Mortg. Co.*, 53 N.Y.S.3d at 328 (finding that dismissing a plaintiff's claims is an improper remedy for the plaintiff's alleged failure to join a necessary party when foreclosure action was filed against at least one properly named party); *NRZ Pass-Through Trust IV v. Tarantola*, 144 N.Y.S.3d 196, 198 (N.Y. App. Div. 2021) (finding that dismissal of complaint is not a proper remedy for failure to join a necessary party in foreclosure action).

7

### B. Expiration of the Six-Year Statute of Limitations

Defendant further argues that it is entitled to summary judgment because Plaintiff has not demonstrated that the applicable statute of limitations for commencing a foreclosure action has expired and thus, the instant action to discharge the Senior Mortgage as time-barred should be dismissed. ECF No. 40-1 at 12. Under New York law, the statute of limitations to commence a foreclosure action is six years from the date of acceleration of the mortgage debt. *See* CPLR § 213(4). An event of acceleration can occur when a creditor commences an action "to recover the entire balance of the [mortgage] debt . . . triggering the six-year statute of limitations . . . ." *Freedom Mtge. Corp. v. Engel*, 169 N.E.3d 912, 919 (N.Y. 2021). Once the period for the "applicable statute of limitation for the commencement of a mortgag[e] has expired, any person with an estate in the property may maintain an action to secure the cancellation and discharge of record of such encumbrance." *Pryce v. Nationstar Mortg. LLC*, No. EF005923-2017, 2018 WL 11211124, at *2 (N.Y. Sup. Ct. June 5, 2018) (internal quotation marks omitted).

The parties agree that on August 27, 2007, CMC commenced the Foreclosure Action due to the Borrower's default under the Consolidated Loan. *See* ECF No. 48-2 ¶ 32 (Plaintiff's 56.1). The parties also agree that the Foreclosure Action identifies CMC as the holder of the Consolidated Loan and that CMC purported to accelerate the indebtedness secured by the consolidated mortgages by initiating the Foreclosure Action. *Id.* ¶¶ 33–34. Finally, the parties further agree that on May 1, 2017, CMC moved to voluntarily discontinue the Foreclosure Action, and on June 8, 2017, the court discontinued the Foreclosure Action. *Id.* ¶¶ 39–40. The parties disagree, however, as to whether CMC had the authority and/or standing to initiate the Foreclosure Action.

Commencement of a foreclosure action is "ineffective to constitute a valid exercise of the option to accelerate a debt where the plaintiff does not 'have the authority to accelerate the debt or to sue to foreclose at that time.'" *MLB Sub I, LLC v. Grimes*, 96 N.Y.S.3d 594, 597 (N.Y. App. Div. 2019) (citing *Wells Fargo Bank, N.A. v. Burke*, 943 N.Y.S.2d 540, 543 (N.Y. App. Div. 2012)); *see also Pryce v. Nationstar Mortg. LLC*, 131 N.Y.S.3d 832, 839 (N.Y. Sup. Ct. 2020) ("[W]here the plaintiff lacks standing to commence the foreclosure action, service of the complaint is ineffective to constitute a valid exercise of the option to accelerate the mortgage debt.  In such circumstances, the purported acceleration is deemed a nullity, and it does not cause the six-year statute of limitations on enforcement of the entire mortgage debt to begin to run.").

Defendant argues that CMC did not have the authority to accelerate the Senior Mortgage or to sue for foreclosure because:  (i) CMC is a servicer and did not own or hold the Note and Senior Mortgage at the time it initiated the Foreclosure Action, ECF No. 40-1 at 13–14; (ii) the complaint in the Foreclosure Action did not properly identify the Trust as the owner of the Note or identify CMC as the servicer, but instead identifies CMC as the holder of the Note, ECF No. 40-1 at 14; (iii) the PSA governing the Trust requires that servicers, like CMC, foreclose mortgages "only in the name of and on behalf of the trustee in its capacity of trustee for the Trust," ECF No. 40-1 at 14; and (iv) the trustee of the Trust never delegated authority to CMC to foreclose mortgages on its behalf, ECF No. 40-1 at 14.  The Court will therefore consider whether CMC effectively initiated foreclosure proceedings as owner, holder and/or servicer of the Senior Mortgage.

    1. *Owner*

The parties dispute whether CMC owned the Note, and therefore had authority to commence the foreclosure action as owner.  *See* ECF No. 48-2 ¶ 36.  Defendants contend that the

9

Trust is the owner and acquired the Consolidated Loan in January 2007 as evidenced by: (i) the PSA dated as of January 1, 2007, identifying the Trust as the owner, *see* ECF No. 41-13 at 2, 77 (PSA); (ii) the deposition testimony of Howard Handville, Senior Loan Analyst for Ocwen Financial Corporation ("Ocwen"),[5] stating that CMC "did not have standing to foreclose in their name as owner of the loan" and identifying the Trust as owner of the Note , ECF No. 41-33 at 28:5–29:13, 33:9–34:2 (Excerpt of Handville Deposition Transcript); and (iii) the executed Mortgage Loan Purchase Agreement conveying the Consolidated Loan to the Trust dated January 1, 2007, ECF No. 41-20 at 4 (Mortgage Loan Purchase Agreement).

Plaintiff argues that CMC identified itself as the owner of the Note and cites to both the complaint and an affidavit filed in support of an order of reference in the Foreclosure Action, *see* Foreclosure Action Complaint, ECF No. 48-11 at 5 ("That said note and mortgage are now held by the plaintiff [CMC], having been assigned by assignment recorded in the office of the Register of the County of Kings . . ."); Affidavit in Support of Order of Reference, ECF No. 48-13 at 7 (same language).[6] Plaintiff further contends that Defendant did not successfully rebut CMC's assertion that it owned the Note at the time the Foreclosure Action was initiated because: (i) the PSA did not include a mortgage loan schedule identifying the Trust as the owner of the Note, ECF No. 48 at 21; (ii) Mr. Handville's deposition testimony inconsistently identifies the owner of the Note as both "LaSalle Trust" and "US Bank Trust," *id.*; and (iii) Mr. Handville's deposition testimony suggests that the Note may have been assigned to CMC and any such

---

[5] Ocwen is an indirect subsidiary of PHH Mortgage Corporation, the loan servicer and attorney-in-fact for Defendant LaSalle. The servicing of the Consolidated Loan transferred from CMC to Saxon Mortgage Services, Inc. ("Saxon") in 2008, from Saxon to Ocwen in 2012, and from Ocwen to PHH Mortgage Corporation in 2019. *See* ECF No. 47-1 ¶ 12 (Defendant's 56.1).

[6] Although Plaintiff argues that CMC identified itself as the Owner, the language in the complaint and the affidavit filed in support of the order of reference in the Foreclosure Action suggests that CMC instead identified itself as a holder of the Note. *See infra.*

10

"ineffective" assignment "had no effect on CMC's status as owner and/or holder of the Note," *id.* at 20; ECF No. 48-22 at 28:5–16 (Excerpt of Handville Deposition Transcript) ("[CMC] did not have the proper assignments in place prior to foreclosing. And the assignments they tried to put in place after the closing with postdate – or predated effective dates [is] a nullity.").

Although CMC may have held itself out to be the owner of the Note in the Foreclosure Action, the evidence, namely the Mortgage Loan Purchase Agreement and the PSA, makes it clear that it was not. *See* ECF No. 41-13 at 2, 77 (PSA); ECF No. 41-20 at 4 (Mortgage Loan Purchase Agreement). Plaintiff challenges Defendant's ownership of the Note arguing that Defendant has not put forth sufficient evidence of Defendant's ownership, *see* ECF No. 48 at 21–22, but that does not change the fact that the evidence is clear that CMC did not own the Note. Accordingly, any identification of CMC as owner is factually incorrect, and CMC lacked standing to foreclose as owner of the Note and Senior Mortgage. *See Pryce*, 131 N.Y.S.3d at 840; *see also Butler v. Gonzalez,* No. 09-cv-1916, 2010 WL 3398156, at * 5 (S.D.N.Y. May 18, 2010) ("The non-moving party may not rely on its pleadings, mere allegations, simple denials, conclusory statements, or conjecture to create a genuine issue for trial.").

2. Holder

The parties also dispute whether CMC held and/or was in possession of the Note, and therefore had authority to commence the foreclosure action as holder. *See* ECF No. 48-2 ¶¶ 17–18, 36 (Plaintiff's 56.1). "A plaintiff has standing in a mortgage foreclosure action when it is the holder or assignee of the underlying note at the time the action is commenced." *Pryce*, 131 N.Y.S.3d at 840 (citation and internal quotation marks omitted); *see also Green Tree Servicing LLC v. Christodoulakis*, 136 F. Supp. 3d 415, 428 (E.D.N.Y. 2015) ("[A] loan servicer has standing to enforce payment of a note so long as it was a holder of the note when the action was

11

commenced.""). "Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff . . . ." *Green Tree Servicing*, 136 F. Supp. 3d at 428 (citing *Wells Fargo Bank, NA v. Ostiguy*, 8 N.Y.S.3d 669, 671 (N.Y. App. Div. 2015)).

The owner and the holder of a note are not necessarily the same entity. *Id.* Accordingly, if CMC was in possession of the indorsed "in blank" Note at the time it initiated the Foreclosure Action—a fact that is currently in dispute, *see* ECF No. 48-2 ¶ 18 (Plaintiff's 56.1)—CMC would have standing. *Aurora Loan Servs., LLC v. Taylor*, 25 N.Y.3d 355, 362 (N.Y. 2015) (holding that "uncontroverted testimony demonstrating [the servicer's] possession of the note prior to commencement of the foreclosure proceedings was sufficient to establish standing"); *see also Green Tree Servicing LLC*, 136 F. Supp. 3d at 428 ("[R]egardless of who the owner of the Note is or was at the time [the] action was commenced, plaintiff's physical possession of the Note, containing an indorsement 'in blank,' at the time the action was commenced . . . was sufficient to confer standing upon it to commence [the] action seeking to enforce payment of the Note.").

CMC was dismissed from the instant action, but the stipulation of voluntary dismissal filed on August 6, 2020 ("Stipulation of Dismissal") signed by both counsel for CMC and Plaintiff states in relevant part: "[T]he Mortgage was subsequently assigned to LaSalle Bank Association, as Trustee, for Morgan Stanley Mortgage Loan Trust 2007-2AX . . . . [T]he assignment to LaSalle is reflected by an Assignment of Mortgage executed January 29, 2009 . . . . *[B]ased on the assignment*, CMC no longer possesses the Mortgage and has no interest in the Mortgage." ECF No. 15 at 1 (Stipulation of Dismissal) (emphasis added). CMC commenced the Foreclosure Action on August 27, 2007, and the Stipulation of Dismissal suggests that, at a

12

minimum, CMC was in possession of the Note, and therefore, was a holder of the Note until 2009. *See Green Tree Servicing LLC*, 136 F. Supp. 3d at 428 (finding that plaintiff's physical possession of the note containing an indorsement 'in blank' at the time the foreclosure action commenced conferred standing). [7] Moreover, Mr. Handville's deposition testimony further suggests that CMC was assigned the Senior Mortgage at some point in time, though he challenges the effective date of that assignment. *See* ECF No. 48 at 20; ECF No. 48-22 at 28:5–16 (Excerpt of Handville Deposition Transcript) ("[CMC] did not have the proper assignments in place prior to foreclosing. And the assignments they tried to put in place after the closing with postdate – or predated effective dates [is] a nullity."). "[A]n 'ineffective written mortgage assignment has no effect on the plaintiff's status as owner and/or holder of the note and mortgage through its possession of the note' at the time of the commencement of [an] action." *1077 Madison Street, LLC v. Smith*, No. 13-cv-7182, 2015 WL 5793427, at *12 (E.D.N.Y. Sept. 30, 2015).

There is a genuine dispute of material fact, therefore, about whether CMC was assigned the Senior Mortgage and possessed the Note at the time of the Foreclosure Action. While it is clear that CMC did not own the Senior Mortgage and the Note, Defendant's assertion that CMC did not "hold the Consolidated Loan" on its own is not enough to substantiate the claim that CMC was not a holder with standing to commence the Foreclosure Action. *See Green Tree Servicing*, 136 F. Supp. 3d at 429 (finding that even where plaintiff servicer was not the owner of the loan, it "would not affect plaintiff's status as a holder of the Note").

---

[7]   As discussed previously, Defendant Alliance Mortgage indorsed the original "wet ink" Consolidated Note in blank. ECF 48-2 ¶ 16 (Plaintiff's 56.1).

*3. Servicer*

As servicer of the Consolidated Loan, CMC may have also had standing to foreclose the Senior Mortgage on behalf of the Trust if such authority was delegated to CMC in the PSA and if CMC identified the Trust as the owner of the Consolidated Loan in the Foreclosure Action complaint.  *See CWCapital Asset Management, LLC v. Great Neck Towers, LLC*, 953 N.Y.S.2d 89 (N.Y. App. Div. 2012) ("[The servicer] has standing to commence this foreclosure action because the complaint identified the Trust as the owner of the note and mortgage, the action was expressly maintained in [the servicer's] capacity as servicing agent, and, in the PSA . . . the Trustee for the Trust, delegated to [the servicer] the authority to act with respect to the subject mortgage.").  As discussed previously, Defendant argues that such authority was never delegated to CMC and that CMC was authorized to foreclose mortgages only in the name of and on behalf of the Trustee.  ECF No. 40-1 at 14.  Because CMC did not identify the Trust as owner of the Note in the Foreclosure Action complaint and did not initiate that action in its capacity as servicing agent, but instead proceeded on the basis that it was the holder of the Note and Mortgage, *see* ECF No. 48-11 at 5 (Foreclosure Action complaint) ("That said note and mortgage are now held by the plaintiff [CMC], having been assigned by assignment recorded in the office of the Register of the County of Kings . . . ."), it did not have authority to initiate the foreclosure action in its capacity as servicer.  *See also Saxon Mortg. Servs. v. Jackman,* 969 N.Y.S.2d 806, 806 (N.Y. Sup. Ct. 2012) (granting dismissal of foreclosure action where servicer failed to identify that it was initiating the proceeding as servicer for the owner of the note and mortgage).

### 4. The Effect of Revocation or De-Acceleration

"A lender may revoke its election to accelerate the mortgage, but it must do so by an affirmative act of revocation occurring during the six-year statute of limitations period subsequent to the initiation of the prior foreclosure action." *Pryce*, 131 N.Y.S.3d at 844; *see also 1042 II Realty, Inc. v. PHH Mortg. Corp.*, 582 F. Supp. 3d 142, 151 (S.D.N.Y. 2022) ("[U]nder New York law, revocation of acceleration of a mortgage debt is only effective to stop the statute of limitations."). The law on de-acceleration is unsettled but the Second Department has held that "[t]o be valid and enforceable, notice to the borrower that the lender has revoked its election to accelerate the mortgage debt must be clear and unambiguous." *Id.* (citations and internal quotation marks omitted). A voluntary discontinuance of a foreclosure action during the six-year statute of limitations period, for example, is sufficient "to raise an issue of fact regarding de-acceleration only if the plaintiff therein explicitly stated that the election to accelerate was revoked or otherwise provided that it would resume accepting monthly installment payments until the next default occurred." *Id.* at 845.

Plaintiff argues that CMC's acceleration, which occurred with the filing of the complaint in the Foreclosure Action, was not de-accelerated within the six-year statute of limitations period. ECF No. 48 at 5, 19. Defendant argues that an acceleration event never occurred because CMC lacked standing to foreclose. ECF No. 40-1 at 6, 12. For the reasons set forth previously, the Court finds that there is a genuine dispute of material fact as to whether CMC was in possession of the Note at the time the Foreclosure Action was filed and therefore whether the Senior Mortgage was accelerated. *See supra.* However, the Court finds that if CMC had standing to foreclose, a revocation of acceleration or de-acceleration did not occur during the six-year statute of limitations period.

15

First, CMC's motion to voluntarily discontinue occurred almost four years *after* the six-year statute of limitations period had lapsed. ECF No. 48-2 ¶¶ 39–40 (Plaintiff's 56.1) (stating that CMC filed the motion to discontinue in 2017). Second, assuming *arguendo* that CMC was in possession of the Note at the time that it commenced the Foreclosure Action, the fact that the Senior Mortgage was assigned to LaSalle in 2009—and that based on that assignment CMC no longer possessed the Note—did not de-accelerate the Senior Mortgage and restart the statute of limitations period. *See Pryce*, 131 N.Y.S.3d at 844 (finding that lender may de-accelerate mortgage but must do so by a "clear and unambiguous" affirmative act of revocation). A valid de-acceleration is accompanied by an unambiguous act that makes the plaintiff's intent to revoke a prior acceleration clear. Evidence of "clear and unambiguous" acts include demands for the "resumption of monthly mortgage installment payments . . . or other evidence demonstrating that [the plaintiff] was truly seeking to de-accelerate the debt." *Pryce*, 131 N.Y.S.3d at 845. Given that no payment has been made on the Consolidated Loan since the Borrower's default in 2007, *see* ECF No. 48-2 ¶ 29 (Plaintiff's 56.1), based on the evidence before the Court, it is not clear and unambiguous that the Borrower was aware of the 2009 assignment to LaSalle and that such assignment resulted in a de-acceleration. *Pryce*, 131 N.Y.S.3d at 844–845. Accordingly, the Court does not find that the 2009 assignment of the Senior Mortgage to LaSalle and the subsequent change in servicers from CMC to Saxon, s*ee* ECF No. 47-1 ¶ 12 (Defendant's 56.1), resulted in a de-acceleration.

    C.  <u>Failure to File a Notice of Pendency</u>

Defendant argues that because Plaintiff did not file a notice of pendency against the Property in connection with this quiet title action, the Court should dismiss the Complaint. ECF No. 40-1 at 17–18. A notice of pendency, also known as a *lis pendis*, is "a document filed with

the county clerk in the county where realty is located which provides record notice that there is a legal action or special proceeding which may affect ownership rights in the subject property." Weinstein, Korn & Miller, 13 New York Civil Practice: CPLR ¶ 6501.00 (2022). "Although filing a notice of pendency is generally optional, in a few circumstances it is required by law, notably in an action to foreclose a mortgage or to quiet title." *Id.* ¶ 6501.06; *see also Diaz v. Paterson*, 547 F.3d 88, 91 n.2 (2d Cir. 2008); *Done v. Wells Fargo, N.A.*, No. 12-cv-04296, 2013 WL3785627, at *7 (E.D.N.Y. July 18, 2013).

While true that Plaintiff must file a notice of pendency, the purpose of the notice is to afford constructive notice from the time of the filing, so that any person who records a conveyance or encumbrance after that time becomes "bound by all of the proceedings taken in the action." CPLR § 6501; *see also Mechs. Exch. Sav. Bank v. Chesterfield*, 309 N.Y.S.2d 548, 550 (N.Y. App. Div. 1970) (holding that purpose of filing notice of pendency is to "carry out public policy that a plaintiff's action shall not be defeated by an alienation of the property during the course of the lawsuit"). Moreover, the law requires that such notice be filed "at least twenty days before a *final judgment*" is rendered. RPAPL § 1331 (emphasis added); *see also* CPLR § 6511 ("[T]he notice of pendency shall be filed in the office of the clerk of any county where property affected is situated, before or after service of summons and at any time prior to judgment.").

In light of the purpose of the law—which is meant to ensure that parties do not evade justice by assigning a property before a judgment is rendered—Plaintiff's failure to file a notice of pendency is not fatal and is not cause for dismissal of the action. *See Mechs. Exch. Sav. Bank*, 309 N.Y.S.2d at 550 (finding that "absolute conformity with the statutory provisions is not necessary, it being sufficient if the notice substantially follows the requirements of those

17

provisions so that a purchaser or encumbrancer will be informed of the statutory items, or given such information as to be put on inquiry as to them, and will not be misled by the record"). Plaintiff must, however, comply with this statutory requirement as soon as practicable to ensure that potential purchasers or encumbrancers are made aware of this action.

## II.     Leave to Amend

As discussed previously, leave to file an amended complaint should be granted freely when justice requires but remains "within the discretion of the trial court." *Zenith Radio Corp*, 401 U.S. at 330.  The Court grants Plaintiff leave to amend the pleadings for the limited purpose of adding Van Buren as a defendant to the action.  Plaintiff is not permitted to assert new claims or legal theories against Defendants.

## CONCLUSION

For the foregoing reasons, the Court DENIES both Defendant and Plaintiff's motions for summary judgment.  The Court finds that there is a genuine dispute of material fact about whether CMC was the holder of the Note.  In other words, whether CMC was assigned the Senior Mortgage and possessed the Note at the time of the Foreclosure Action.  The Court further directs Plaintiff to join Van Buren as a necessary party and to file a notice of pendency as soon as practicable.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
         December 28, 2022